John J. Moffett v. Commissioner.
Moffett v. Commissioner
Docket No. 48933.
United States Tax Court
T.C. Memo 1955-201; 1955 Tax Ct. Memo LEXIS 136; 14 T.C.M. (CCH) 809; T.C.M. (RIA) 55201; July 21, 1955
*136 1. Where respondent's net worth computation failed to take into consideration substantial loans to petitioner by his father during the years in question and was based in part on other figures inconsistent with the stipulation, the deficiencies as determined were incorrect and corrected deficiencies are determined. 2. None of the deficiencies was due to fraud with intent to evade tax. Seymour J. Ugelow, Esq., for the petitioner. Maurice E. Stark, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion Respondent determined deficiencies and penalties under section 293(b) of the Internal Revenue Code of 1939 as follows: Income Tax
Year
Deficiency
50% Penalty
1942
$ 260.50
$ 130.25
1943
376.65
188.33
1944
62.00
31.00
1945
14,801.17
7,400.59
Respondent's answer alternatively claims an increased deficiency and penalty for 1943 based upon section 6(a) of the Current Tax Payment Act of 1943 in the event no fraud is found as to the year 1942. By amendment to his answer, respondent claims an increased deficiency and penalty for 1945 based on the inclusion of an additional $1,085.91 in petitioner's income *137 for that year. The questions for decision are whether respondent properly computed petitioner's income and the deficiencies for the years 1942 through 1945 by the net worth method, and whether any part of the deficiencies was due to fraud with intent to evade tax. The stipulated facts are found as facts and incorporated herein by reference. Findings of Fact Petitioner is an individual residing in New York City. His Federal income tax returns for the years 1942 through 1945 were timely filed with the collectors for the first and/or fourteenth districts of New York. Petitioner was born on his father's farm in Ireland, one of seven children of Patrick and Margaret Moffett. The Moffetts moved from Ireland to the United States in 1919. Patrick Moffett, the petitioner's father, was employed by the Second Avenue Transit Line in New York City as a conductor and motorman from 1919 to about 1927, receiving a regular salary. He also earned money from about 1923 to 1929 by manufacturing home-made liquor in a small still in his home and selling it privately. During the years 1933 to 1945, Patrick Moffett was not employed. He handled all business affairs and transactions for the family. *138 During a part or all of the period from 1933 to 1945 there were five or six children living at the Moffett home, none of whom contributed to their parents' support during that period. Margaret Moffett, petitioner's mother, had been employed during her early life as a dress designer. She was not employed and had no source of income during the 10 years preceding 1942. She died in October 1953. Petitioner was employed in New York City by the Cudahy Packing Company from some time in 1937 until September or October 1945. During a part or all of his emplom employment with that company, the petitioner sold poultry and eggs. He was also engaged in operating an automobile agency, a restaurant, bar and grill and rental property during a part or all of the years in question. The petitioner's records of his income and expenditures during the years in question consisted of checkbooks, savings bank books, vouchers, statements and some records pertinent to loans and mortgages. As of December 31, 1941, the petitioner had a balance in a special checking account in the amount of $120.18 and a balance in a savings account at the National City Bank of New York in the amount of $417.53. On that *139 date he also owned a 1938 Oldsmobile which he had purchased in 1940 for $300. During the years 1942 and 1943, certain payroll deductions for the purchase of U.S. Series E bonds were made from the compensation received by petitioner from the Cudahy Packing Company. As of December 31, 1942, petitioner owned U.S. Series E bonds in the amount of $506.25, had a balance in a special checking account in the amount of $207.85, a balance in a savings account at the National City Bank of New York in the amount of $1,158.62 and retained ownership of the 1938 Oldsmobile. In or about May 1943, petitioner purchased for $675 a one-half interest in Boat Inn, Inc., which operated a restaurant, bar and grill. The money for the investment was drawn out of petitioner's savings account in the National City Bank of New York on May 18, 1943. Petitioner maintained his interest in the business up to and including December 31, 1945. Following his investment in Boat Inn, Inc., the petitioner became secretary and treasurer of that organization and during the remainder of the period here in question he worked at Boat Inn, Inc., after completing his usual work-day with Cudahy Packing Company at two or three *140 o'clock each afternoon. Petitioner did not receive any money as salary or profits from Boat Inn, Inc., in 1943, 1944 or 1945. In 1943, petitioner borrowed from his father $1,000, which money was used to buy liquor for Boat Inn, Inc., and in 1944 petitioner borrowed the further sum of $500 from his father, which money was also used to make purchases for Boat Inn, Inc. On December 3, 1945, he received from Boat Inn, Inc., the sum of $1,500 as a repayment of the advances which he had made to the corporation. In 1946, petitioner sold his one-half interest in Boat Inn, Inc., for $11,000. As of December 31, 1943, the petitioner had a balance in a special checking account in the amount of $53.63, a balance in a savings account at the National City Bank of New York in the amount of $415.36, which balance remained the same up to and including December 31, 1945, and owned U.S. Series E bonds in the amount of $1,050. During the year 1944, petitioner sold his 1938 Oldsmobile for approximately $600 and acquired a 1940 LaSalle for the same amount. Petitioner owned the 1940 LaSalle as of December 31, 1944. On September 28, 1944, the petitioner obtained a loan in the net amount of $1,000 *141 and as of December 31, 1944, there was a balance still owing by him on that loan in the amount of $867.53. As security for the loan, the petitioner, on September 28, 1944, executed a chattel mortgage on the 1940 LaSalle automobile owned by him. As of December 31, 1944, the petitioner had a balance in a regular checking account in the amount of $214.06 and owned U.S. Series E bonds in the amount of $1,800. During the year 1945, the petitioner sold his 1940 LaSalle automobile for $1,200 and acquired a 1941 Cadillac for the same amount. Petitioner owned this car up to and including December 31, 1945. In 1945 the petitioner decided to go into the automobile agency business and on February 2, 1945, he entered into a contract for the purchase of land and a building in Glen Cove, Long Island, for the sum of $46,000. He paid $4,600 toward the purchase price upon the signing of the contract. On March 29, 1945, petitioner closed title for the property at Glen Cove, Long Island, and paid $10,400 toward the balance of the purchase price, plus adjustments in the amount of $257.55. In connection with the purchase of the land and building, the petitioner gave a bond and purchase money mortgage *142 to the seller, Ida M. Kaufman, in the amount of $31,000. The petitioner retained his interest in the Glen Cove property as of December 31, 1945. The $4,600 paid upon the signing of the purchase contract and the $10,657.55 which petitioner paid at the closing of title were borrowed by petitioner from his father, Patrick Moffett. The money was obtained by petitioner in cash at his father's house early in 1945. When petitioner purchased the Glen Cove property on March 29, 1945, the Classic Underwear Company was occupying the building under a lease. During the remainder of 1945, petitioner received rentals from the Classic Underwear Company at the rate of $225 per month, or a total of $1,814.52, none of which was reported. The ordinary and necessary expenses of operating and maintaining the premises during 1945 while they were owned by petitioner amounted to $1,603.61. In addition to the rental payments, petitioner also received from the seller of the Glen Cove property the sum of $1,000 which the tenant, Classic Underwear Company, had deposited as security for the lease. The $1,000 belonged to the tenant and petitioner held this sum for the account of the tenant. As of December 31, 1945, petitioner *143 had a balance of $1,085.91 in a bank account. Of that amount, $1,000 was the security for the lease belonging to the tenant. The petitioner invested the sum of $17,500 in Moffett Motors, Inc., and became a 50 per cent stockholder thereof on October 2, 1945. On October 29, 1945, Moffett Motors, Inc., received a franchise from the Chrysler Corporation to sell its automobiles. Petitioner continued to own his interest in the corporation on December 31, 1945. The corporation did no business and petitioner received no money from it in 1945. Of the $17,500 invested, $11,500 was received by petitioner from his father as a cash loan in September 1945. The balance of $6,000 was received as the proceeds of two loans to petitioner by the National Bronx Bank, one of $3,500 and one of $2,500 made on or about October 2, 1945. The $3,500 loan was repaid before the end of 1945. During the year 1945, the petitioner purchased U.S. Series E bonds in the amount of $787.50. On November 29, 1945, he redeemed U.S. Series E bonds in the amount of $2,437.50, exclusive of interest thereon, and on December 31, 1945, he owned $150 in bonds of this type. As of December 31, 1945, petitioner had a balance *144 in a regular checking account in the amount of $505.26. In December 1945, petitioner paid $500 toward the purchase of an interest in Park House, Inc., which operated a restaurant in Park Chester, New York. That sum remained on deposit as of December 31, 1945. Petitioner received no money from Park House, Inc., in 1945. The aforementioned $2,500 loan of October 2, 1945, from the National Bronx Bank was secured by a chattel mortgage executed by petitioner on his 1941 Cadillac. There was a balance of $2,167.71 due on that loan as of December 31, 1945. The petitioner borrowed $5,000 from the National Bronx Bank on December 7, 1945, which loan was outstanding as of December 31, 1945. This loan was secured by $5,500 worth of U.S. Treasury bearer bonds. In this transaction, a bond in the face amount of $5,000 was purchased for petitioner by the National Bronx Bank. Henry Corsa, an officer of the bank, personally furnished a $500 bond as collateral for the transaction by way of a loan to petitioner. This $500 bond was not owned by petitioner. Patrick Moffett kept substantial amounts of money in the house. At the times petitioner received the money for the purchase of the Glen Cove *145 property and the interest in Moffett Motors, Inc., his father removed the currency from a metal box, roughly 12 X 14 X 5 inches in size, which had been seen often over the years by petitioner and his brothers. On September 20, 1947, petitioner executed and acknowledged a bond and mortgage in the amount of $28,000, dated that day, in favor of Patrick and Margaret Moffett, to secure the loans petitioner had made from his father. The property covered by the mortgage was the same Glen Cove property which petitioner had purchased for the purpose of setting up the automobile agency operated by Moffett Motors, Inc. The documents were prepared at the suggestion of petitioner's attorney that he should protect his parents' interest in case anything happened to him. Petitioner made 73 payments by checks endorsed by Patrick Moffett, totaling over $16,000, against the bond and mortgage, during the years 1948 to 1954. During the years in question, petitioner's wife and daughter lived with him. Neither of them had any income during this period. Petitioner and his wife contributed to the support of petitioner's mother-in-law throughout the period and in the latter part of 1945 she came to live *146 with petitioner and his wife. On his returns for the years in question, the petitioner reported no income other than his salary from Cudahy Packing Company, as follows: Year
Salary Reported
1942
$2,840.00
1943
2,915.75
1944
3,206.00 *
1945
2,841.00
The petitioner received a commission in the amount of $404.31 during the year 1942 for arranging an isolated sale of poultry for a butcher, which commission he failed to a report as income in his 1942 return. His savings account was credited with $10.39 interest in 1942 which was not reported. Petitioner did not report on his 1944 and 1945 returns the capital gains realized in those years upon the sale of automobiles. Petitioner did not report on his 1945 return the interest income received upon the redemption of U.S. Series E bonds during that year. Petitioner reported no interest from his savings account in the National City Bank during the years in question. Margaret Moffett, petitioner's mother, opened a savings account in the Dollar Savings Bank of New York on March 26, 1943, with a deposit of $330. *147 On February 14, 1945, there was filed a signature card making the account a joint account, payable to Margaret or Patrick Moffett or the survivor. The account remained in their joint names through December 31, 1945. During the years in question, there were some deposits but no withdrawals from the account. The balance as of December 31, 1945, was $884.88 which was the largest amount in the account at any time up to that date. Margaret Moffett opened another savings account in the same bank in her name in trust for her daughter, Elizabeth A. Moffett, on September 7, 1943, making a deposit of $170. During the years in question, there were deposits made to this account and one withdrawal in the amount of $15 on November 9, 1944. The balance in the account as of December 31, 1945, was $1,706.11 which was the largest balance in the account at any time up to that date. Petitioner's unreported income for the years in question was as follows: 1942
1943
1944
1945
$414.70
None
$300.00
$910.91
No part of the deficiencies for any of the years was due to fraud with intent to evade tax. Opinion ARUNDELL, Judge: The respondent determined deficiencies and fraud *148 penalties for the years 1942 through 1945 using the net worth method for the purpose of determining petitioner's income during the several years. It is the year 1945 in which the large deficiency and penalty appears. Petitioner's defense is that the property making up his net worth, particularly in 1945, was acquired through a loan from his father and we have found this to be a fact, as set forth in our findings. This defense of petitioner was nothing new that found its way into the case at the time of trial. When this case was first investigated some seven years before, petitioner told the revenue service that the property he acquired in 1945 was obtained with funds loaned to him by his father and the father also so advised the investigating revenue agents of this fact many years ago. Respondent, who has the burden of proving the fraud, can point to no source from which petitioner could have made the very substantial amounts of income charged to him. The lesser amounts of concededly unreported income reflected in our findings arose from failing to report an isolated commission made on the sale of some poultry in the year 1942; failure to report as income the interest on a few Series *149 E bonds and a savings account, and the failure to report small profits incident to the trading in of private automobiles. In our finding as to the unreported income for 1945, we have also included the excess of rent received by petitioner from the Glen Cove property over the ordinary and necessary expenses of renting the property. Although petitioner testified that the expenses exceeded the rent, it appeared that certain of the claimed expenses were in the nature of capital expenses. In the absence of clear proof to the contrary, we disallowed those doubtful items. In the circumstances, we think the respondent has failed to prove that any part of the deficiencies was due to fraud. Petitioner's unreported income for the several years is set forth in our findings and the deficiencies in tax can be determined therefrom. As no fraud has been found in any of the taxable years, the redetermination of tax for the years 1942 and 1943 should give effect to the provisions of section 6(a) of the Current Tax Payment Act of 1943. Decision will be entered under Rule 50. Footnotes
*. The 1944 return showed additional income from dividends and interest in the amount of $8.00.↩